IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DONALD BROADNAX, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | |
| ) | Case No. 2:13-cv-01142-AKK |
| ) | **CAPITAL CASE** |
| JEFFERSON DUNN, Commissioner, ) | |
| Alabama Department of Corrections,) | |
| ) | |
| Respondent. ) | |

**PETITIONER'S RULE 59(e) MOTION TO RECONSIDER,
ALTER OR AMEND THIS COURT'S FINAL JUDGMENT**

Donald Broadnax presented evidence during state post-conviction proceedings supporting an alibi defense to the murders for which he was convicted and sentenced to death. He alleged that his trial counsel were ineffective for failing to find this evidence. The Alabama courts concluded, and this Court agreed, that Mr. Broadnax's attorneys had no duty to look for this evidence, because he provided them a different alibi. Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, Mr. Broadnax files this Motion to Reconsider, Alter or Amend this Court's Final Judgment denying his habeas corpus petition.

**I. Standard of Review**

Rule 59(e) does not enumerate the bases for seeking relief in a motion filed under that rule, but courts considering motions to reconsider have traditionally granted relief on one of four grounds: (1) "manifest errors of law or fact upon which the judgment is based"; (2) "newly discovered or previously

1

unavailable evidence"; (3) "manifest injustice"; and (4) "an intervening change in controlling law."[1] It is proper to raise errors of law and fact in a Rule 59(e) motion because such a motion "looks back at what was; it does not look forward at what could have been."[2] The decision whether to alter or amend its judgment is within the sound discretion of this Court.[3]

## II. Timeliness

A motion under Rule 59 must be filed no later than 28 days after the entry of judgment.[4] A timely Rule 59 motion tolls the time in which to file a notice of appeal.[5] This Court entered the final judgment in Mr. Broadnax's case on December 13, 2019.[6] Therefore, any Rule 59 motion would be due by January 10, 2020. This motion is timely.

## III. Reasons for granting the motion

**A. This Court's rejection of Mr. Broadnax's claim that his trial counsel were ineffective for failing to investigate his alibi is based on manifest errors of the law governing ineffective assistance of counsel.**

Mr. Broadnax argued that his attorneys were ineffective in the guilt phase of his trial because they did not present evidence that would have shown

---

[1] 11 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2810.1, pp. 158–162 (3d ed. 2003) (Wright & Miller). *See also Jenkins v. Anton*, 922 F.3d 1257, 1263 (11th Cir. 2019) ("[W]e have said that a district court may alter or amend a judgment that is based on 'manifest errors of law or fact.'").

[2] *Jenkins, supra.*

[3] *Am. Home Assurance Co. v. Glenn Estess & Assocs.*, 763 F.2d 1237, 1238–39 (11th Cir.1985).

[4] Fed. R. Civ. P. 59(e).

[5] Fed. R. App. P. 4(a)(4)(A).

[6] Doc. 21.

2

that the state's timeline for the murder was impossible, and that he had an alibi that could be independently supported. The Alabama courts and then this Court rejected that claim, concluding that Mr. Broadnax's lawyers had no duty to investigate and find the evidence that counsel presented during his state post-conviction hearing because Mr. Broadnax had given them a different alibi: he was working at the Wellborn Cabinet Factory. This conclusion is manifestly erroneous, legally and factually.  This Court should vacate its judgment denying Mr. Broadnax's habeas corpus petition, grant relief, and vacate his conviction and death sentence.[7]

### 1. Mr. Broadnax presented significant alibi evidence during state post-conviction proceedings that could have been obtained and presented at his trial.

During state post-conviction proceedings, Mr. Broadnax presented unrefuted evidence[8] establishing that he was present and accounted for at the work release center at 9:00 p.m. If Mr. Broadnax was in Alexander City at 9:00 p.m., he could not have also been in Birmingham at 8:50 p.m. abandoning a

---

[7] In the alternative, this Court could vacate the judgment on the deficient performance prong and then evaluate the state court's decision on the prejudice prong. If this Court does so, Mr. Broadnax requests that the Court set a hearing on the prejudice prong since it will have made a finding that the State court decision is, at some level, objectively unreasonable.

[8] The State did not provide any evidence to refute the alibi evidence Mr. Broadnax presented at his state post-conviction hearing. The Court of Criminal Appeals, with no evidence to support it, concluded that Mr. Broadnax purposefully wrote the wrong time on the inmate sign-in/sign-out sheet. "A much more reasonable interpretation of, and likely explanation for, the inmate log is that Broadnax arrived at the facility at 11:50 p.m. but simply lied when he wrote down 9:00 p.m. in an effort to cover up his involvement in the murders." *Broadnax v. State*, 130 So. 3d 1232, 1260 (Ala. Crim. App. 2013). However, there was no evidence to support this conclusion. Rather than accept exculpatory evidence, the Court of Criminal Appeals chose to contradict it without proof.

3

car which contained the murdered bodies of his wife and grandson.[9] Trial testimony established that it would have taken at least 90 minutes to travel the distance between Birmingham and Wellborn.[10]

Mr. Whetstone, Mr. Broadnax's case load officer at the work release center, testified that he came to work sometime between 9:30 p.m. and 10:00 p.m. to start his shift, and that Mr. Broadnax was waiting for him.[11] Mr. Whetstone's testimony establishes Mr. Broadnax's presence at the work release facility at 9:30 p.m. as follows:

> Q: Do you remember seeing Donald Broadnax when you came onto your shift, or shortly after you started your shift?
>
> A: Yes, I do.
>
> Q: And you came on your shift at what time?
>
> A: **9:30.**[12]

Mr. Whetstone testified that the first head count was conducted about 15 minutes after the start of his shift.[13] Critically, Mr. Whetstone said that performing a head count required visually matching an inmate with his bunk

---

[9] Vol. 7, TR. 757 (Birmingham Police Detective Vincent Cunningham testifying at trial that the car was found in Birmingham at "about 8:50 p.m."). The testimony of people in the neighborhood was that the car was not there at 8:20 p.m. but was there at 8:50. Doc. 20, p. 3.

[10] At trial, Detective Cunningham stated that the trip takes "[a]pproximately, I'd say, no more than an hour and thirty minutes at the most." Vol. 6, TR. 734.

[11] Vol. 37, Tab #R-89, TR. 34.

[12] Vol. 37, Tab #R-89, TR. 48.

[13] Vol. 37, Tab #R-89, TR. 32.

so that an inmate not accounted for in that way would eventually be declared missing.[14]

This Court accepted uncritically the Court of Criminal Appeals' assertion that "[Mr.] Whetstone's testimony established that he did not see Broadnax the night of April 25, 1996, until midnight or after."[15] As shown above, this "factual finding" is wrong. The testimony, while not exact about the time, was that Mr. Whetstone's testimony established that he saw Mr. Broadnax shortly after his shift started, at 9:30 p.m.

Because the evidence showed that Mr. Broadnax was at the Alexander City Work Release Center before 10:00 p.m. that evening, the State's theory of the crime, which relied on Mr. Broadnax being in Birmingham at 9:00 p.m., falls apart. As Mr. Whetstone testified, Mr. Broadnax was present during the first, and each subsequent, head count.[16] If Mr. Broadnax had been absent, Mr. Whetstone would have reported his escape.[17]

Floyd Cumbie, a former corrections officer at the Alexander City Work Release Center, corroborated Mr. Whetstone's testimony regarding inmate accountability procedures in use on April 26.[18] Mr. Cumbie confirmed Mr.

---

[14] Vol. 37, Tab #R-89, TR. 39 (Mr. Whetstone recalling that "And then I will go out there, by bed number, and I will go out there to each bed, and I will look at that sheet. Look at the sheet, then I look at the bed. And then, I will see if that person is in bed." He later clarified in direct response to the Court's question that "Yes, sir. They have to be on bed [sic] when we count.").

[15] *Broadnax v. State*, 130 So. 2d. 1232, 1259 (Ala. Crim. App. 2013).

[16] Vol. 37, Tab #R-89, TR. 38, 44.

[17] Vol. 37, Tab #R-89, TR. 40, 48.

[18] Vol. 39, TR. 83 (Mr. Cumbie testifying that head counts required "visually count[ing] every inmate by sight and then we would compare it to the worksheet to clear our count.").

5

Whetstone's testimony that inmates signed in on the inmate sign-in/sign-out sheet when they arrived at the Work Release Center, while officers were there, and the inmate sign-in/sign-out sheet was used to verify the counts that were conducted during the officer's shifts.[19]

Mr. Cumbie's testimony established that the inmate sign-in was kept "outside in the hallway just outside of the correctional officer's office" and "four or five feet" from the inmates' entrance.[20] He also testified that the 9:20 p.m. count on his shift would not have cleared if Mr. Broadnax was not there because the inmate sign-in/sign-out sheet indicated that Mr. Broadnax was there at 9:00 p.m.[21] Mr. Cumbie's testimony was that the counts always cleared, so had Mr. Broadnax not been there at 9:00 p.m., the inmate count would not have cleared, or had he signed in at 9:00 p.m. and not been there, the count would not have cleared.[22]

But this was not the only evidence presented in State court that supported a defense that Mr. Broadnax could not have committed these murders. Roger Stolz's affidavit asserted that on the evening of April 25, 1996, he (not Mr. Broadnax) was working late at the Wellborn Cabinet Factory, and

---

[19] Vol. 39, TR. 84-85, 90 (Mr. Cumbie clarified on cross that correctional officers visually observed and searched inmates as they signed in: "Q: Was it routine for you or another employee of the center to actually watch residents as they signed in or signed out to make sure that the time that they signed in and out was the proper time? A: Yes, sir. When they signed in, it was -- as they came in, the officer that would shake them down would call their names out.").

[20] Vol. 39, TR. 85.

[21] Vol. 39, TR. 83-84.

[22] Vol. 39, TR. 83 (Mr. Cumbie testifying that "the sign-in/sign-out sheet was [an] indirect correlation with the count, they both had to match to clear the count.").

left the plant at approximately 10:30 p.m. with Mark Chastain after Chastain set the alarm.[23] Donald Bowden, an inmate van driver, substantiated that on the evening of April 25, 1996, he collected Mr. Broadnax at the Wellborn Cabinet shop between 9:00 p.m. and 10:00 p.m.[24]

In sum, four disinterested witnesses corroborated Mr. Broadnax's alibi that at the time of the murders, that he was incarcerated, and accounted for, some seventy-five miles away from Birmingham at the Work Release Center in Alexander City, Alabama. That two of these witnesses were correctional officers would have made them more credible in the jury's mind. It is fair to conclude that these several alibi witnesses readily could have altered the outcome of his trial.[25]

The Court of Criminal Appeals and this Court bypassed the strength of this evidence and focused on the fact that this evidence contradicted the story that Mr. Broadnax originally told the police and his attorneys. However, as detailed below, the fact that a client tells their attorney a story that does not pan out does not absolve counsel from the duty to investigate a defense.

> **2. This Court's legal conclusion that Mr. Broadnax's attorneys were not required to further investigate his alibi is manifestly erroneous because it failed to apply the Supreme Court's precedent on ineffective assistance of counsel.**

---

[23] Vol. 36, C. 917.

[24] Vol. 39, TR. 89-90.

[25] *See Ramonez v. Berghuis*, 490 F.3d 482, 489-90 (6th Cir. 2007)(where a trial "boil[s] down to a credibility contest," there is a "reasonable probability that the jury would have altered the verdict" based upon the testimony of additional corroborating witnesses for the defense).

7

In the face of this unrefuted evidence, the Alabama courts and this Court concluded that Mr. Broadnax's attorneys were not ineffective for failing to discover and present this evidence. This Court focused on the deficient performance prong of *Strickland v. Washington* and concluded:

> Based on this record, "trial counsel cannot reasonably be faulted for failing to discover information which was within [Broadnax's] personal knowledge . . . but which [he] failed to disclose to his trial counsel." *Dallas v. Dunn*, No. 2:02-CV-777-WKW, 2017 WL 3015690, at *65 (M.D. Ala. July 14, 2017).Moreover, counsel's performance was not deficient because they failed to investigate Broadnax's whereabouts at 9:00 p.m. on the night of the murders on the "off-chance" they would find that he was in fact not at Welborn as he had represented to counsel. Indeed, prior to the second amended Rule 32 petition, the record contains nothing that suggests or hints that Broadnax returned to the WRC at 9:00 p.m. Accordingly, Broadnax has not proven that the ACCA's decision regarding counsel's investigation of his alibi defense was based on an unreasonable determination of the facts in light of the evidence presented or was contrary to or an unreasonable application of *Strickland*.[26]

In rejecting this claim, the Court only cited in passing the salient Supreme Court precedent on the subject of counsel's duty to investigate and ignored that there is a duty to investigate even if your client confesses.

The Alabama Court of Criminal Appeals found that Mr. Broadnax did not prove deficient performance because Mr. Broadnax told his trial counsel he was at Wellborn during the murders. Therefore, the CCA opined that trial counsel properly limited the scope of their investigation based upon "the information

---

[26] Doc. 20, p. 31.

supplied by their client."[27] However, this conclusion, which this Court found reasonable, is contrary to Supreme Court precedent.

"Although a defendant's proclamation of innocence ... may affect the advice counsel gives," it "does not relieve counsel of his normal responsibilities under *Strickland.*"[28] As such, "[]even if the alibi was suggested by [Mr. Broadnax], counsel [could not] neglect to investigate both the possible alibi and alternative defenses."[29]

The Supreme Court held in *Rompilla v. Beard*[30] that a defendant's unhelpfulness respecting his case does not negate counsel's independent duty to investigate. In *Rompilla*, counsel conducted some mitigation investigation, but declined to review prior conviction records they knew the prosecution would use at sentencing. "If the defense lawyers had looked in the file on Rompilla's prior conviction, it is uncontested they would have found a range of mitigation leads that no other source had opened up."[31]

"Rompilla's own contributions to any mitigation case were minimal" and "[t]here were times when Rompilla was even actively obstructive by sending counsel off on false leads."[32] Indeed, the Third Circuit found that "neither Rompilla himself nor any family member even hinted at the problems on which

---

[27] *Broadnax v. State*, 130 So. 3d 1232, 1257 (Ala. Crim. App. 2013).

[28] *Burt v. Titlow,* 134 S. Ct. 10, 17 (2013).

[29] *Bemore v. Chappell*, 788 F.3d 1151, 1164 (9th Cir. 2015).

[30] 545 U.S. 374 (2005).

[31] *Rompilla*, 545 U.S. at 390.

[32] *Id.* at 381.

9

Rompilla's ineffective assistance claim is based."[33] Nonetheless, the Supreme Court held that "failure to examine Rompilla's prior conviction file fell below the level of reasonable performance."[34] In doing so, it quoted the 1982 ABA Standards for Criminal Justice 4–4.1 (2d ed. 1982 Supp.), affirming, in relevant part, "[t]he duty to investigate exists regardless of the accused's admissions or statements to the lawyer ...."[35]

"The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."[36] Under prevailing professional norms extant in 1996, it was objectively unreasonable for counsel to premise an investigation solely on what Mr. Broadnax said or did not say about the crime. Counsel had an obligation "'to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case.'"[37] Similarly, the 1989 American Bar Association Guidelines, which applied at the time of Mr. Broadnax's trial, required that counsel conduct "independent investigations relating to the

---

[33] *Rompilla v. Horn*, 355 F.3d 233, 241 (3d Cir. 2004), *rev'd sub nom. Rompilla v. Beard*, 545 U.S. 374, 125 S. Ct. 2456, 162 L. Ed. 2d 360 (2005).

[34] *Rompilla*, 545 U.S. at 383.

[35] *Id.* at 387. This duty to investigate is not something created by the American Bar Association standards in capital cases. It exists in civil matters as well. *See e.g. Chemtall v. Citi-Chem. Inc.*, 992 F. Supp. 1390, 1409, n.21 (S.D. Ga, 1998) ("In light of these facts, King's Georgia counsel is reminded of his duty to reasonably investigate the factual and legal grounds before filing further defensive pleadings. He cannot merely rely on what his client tells him.")

[36] *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

[37] *Bobby v. Van Hook*, 558 U.S. 4, 7 (2009) (quoting the American Bar Association Standards for Criminal Justice in effect in 1985).

10

guilt/innocence phase."[38] It also required counsel to "explore the existence of other potential sources of information relating to the offense ...."[39] And it provided that "the investigation for preparation of the guilt/innocence phase of the trial should be conducted *regardless of any admission or statement by the client concerning facts constituting guilt.*"[40]

This Court failed to address Mr. Broadnax's claim of ineffective assistance in the light of this precedent. Rather, it cited to a district court opinion from a different district, concluding that ""trial counsel cannot reasonably be faulted for failing to discover information which was within [Broadnax's] personal knowledge . . . but which [he] failed to disclose to his trial counsel."[41] That statement has no citation supporting it, because it cannot. Supreme Court precedent does not permit a court to reject wholesale a claim of ineffective assistance of counsel because the client did not provide any information to support the claim.[42] This court absolved defense counsel of their deficient performance in the face of evidence that was easily obtained and which would have undermined if not entirely eroded the State's case against Mr. Broadnax.

Mr. Broadnax's attorneys failed to make any informed judgment about

---

[38] ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases 11.4.1(B) (1989).

[39] *Id.* at 11.4.2(B).

[40] *Id.* at 11.4.1(B) (emphasis added).

[41] Doc. 20, p. 31.

[42] *Strickland*, 466 U.S. at 690-691; *Williams (Terry) v. Taylor*, 529 U.S. 362, 396 (2000); *Wiggins v. Smith*, 539 U.S. 510, 524-25 (2003).

11

which defense to pursue in this case because they did not have information to make such an informed judgment.[43] Instead, counsel abandoned efforts to establish an alibi early on, after failing to find corroboration for Mr. Broadnax's account of his whereabouts:

> Specifically, Brower said that Broadnax told them that he was at Welborn[sic] the entire day and evening of the murders, although Broadnax was unable to provide a single alibi witness who had seen him at Welborn after approximately 6:30 p.m. In addition, Brower testified that Broadnax had said that he was on the telephone with Wanda Broadnax, his sister-in-law, at the approximate time the bodies were left in Birmingham but that telephone records obtained by the State did not support the assertion and there was no other corroboration. As a result, Brower said, he and Bender could not present evidence that Broadnax was on the telephone at Welborn[sic] at approximately 9:00 p.m. the night of the murders without calling Broadnax himself to testify, which, in Brower's opinion, would have been harmful to the defense.[44]

This testimony confirms that Mr. Broadnax's counsel performed a cursory investigation, limited to interviewing only alibi witnesses Mr. Broadnax could identify[45] and reviewing phone records obtained by the State. Mr. Brower and Mr. Bender were representing a man who was accused of committing a murder while he was incarcerated, yet incredibly, they obtained no records from the

---

[43] *House v. Balkcom*, 725 F.2d 608, 618 (11th Cir. 1984) ("While we do not require that a lawyer be a private investigator in order to discern every possible avenue which may hurt or help the client, *we do require that the lawyer make an effort to investigate the obvious*. Pretrial investigation, principally because it provides a basis upon which most of the defense case must rest, is, perhaps, the most critical stage of a lawyer's preparation.") (Emphasis added).

[44] *Broadnax*, 130 So. 3d at 1253 (footnote omitted).

[45] *See* Vol. 26, TR. 76-77 (counsel testifying there were "[no defense witnesses] for us to subpoena. There was nobody – he obviously told us he didn't do it. There was nobody we could subpoena to say he didn't do it because he was with me or somewhere else at the time. All of the witnesses we were aware of where people who saw him driving away in the car, people who saw him come back to the work release center."); *Washington v. Smith*, 219 F.3d 620, 631 (7th Cir. 2000) ("Telling a client, who is in custody awaiting trial, to produce his own witnesses (as did Mr. Engle) falls painfully short of conducting a reasonable investigation ....").

12

work release center where Mr. Broadnax was incarcerated, and did not speak to Mr. Broadnax's counselor or other corrections officials.[46] In other words, they did not investigate the obvious.

Further, defense counsels' concern about having Mr. Broadnax testify would have been completely alleviated if they had done a proper investigation. Instead of Mr. Broadnax testifying, there would have been testimony from corrections officers and official records of the Department of Corrections. Yet, counsel failed to uncover any of this evidence.

"[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."[47] Thus, "[i]f trial counsel's investigation of a potential alibi defense was unreasonably limited, then trial counsels' decision not to present an alibi defense is too ill-informed to be considered reasonable."[48] Defense counsel stated that they directed their investigator to try to find information to support an alibi for Mr. Broadnax, who insisted, and insists to this day that he did not commit this crime, but they allegedly found no exculpatory evidence.[49] In defense counsel's own testimony,

---

[46] Vol. 26, TR. 76-77.

[47] *Code v. Montgomery*, 799 F.2d 1481,1484 (quoting *Strickland*, 466 U.S. at 691); *Baxter v. Thomas*, 45 F.3d 1501, 1514 (11th Cir. 1995) ("[O]ur case law rejects the notion that a 'strategic' decision can be reasonable when the attorney has failed to investigate his options and make a reasonable choice between them.") (quoting *Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir.1991)).

[48] *Stitts v. Wilson*, 713 F.3d 887, 891 (7th Cir. 2013).

[49] Vol. 26, TR. 85-86. ("If we could have found somebody who could say he was here at that time or he was talking to me at that time so he couldn't have been up in Elyton Village, well, obviously we would have dug that person up and brought him to court. There was nobody like that.") As the state post-conviction hearing showed, this statement was not accurate.

they would have called a witness to support Mr. Broadnax's alibi if they could find one, but "[t]here was nobody like that."[50] In other words, defense counsel performed an inadequate investigation.

Counsel could in fact have presented alibi witnesses. In fact, at Mr. Broadnax's hearing, he presented corrections officers, fellow inmates, and documents which supported Mr. Broadnax's defense. All of this evidence verified his presence at the work release center, disproved the State's timeline for the murders and casted doubt on the credibility of the prosecution's witnesses and evidence. Further, each post-conviction witness testified that no one from Mr. Broadnax's trial defense team spoke with them.[51]

The clearest illustration of this Court's manifestly erroneous legal conclusions is its acceptance of the ACCA's wholly incorrect view that Mr. Broadnax was required to provide all of the information to his lawyers, and his failure to do so meant that they did not perform deficiently.[52] To take the ACCA's conclusion to its logical extreme, no defense counsel can be ineffective for failing to investigate any defense, mitigation, or any other helpful fact, that

---

[50] Vol. 26, TR. 85-86.

[51] *See, e.g.,* Vol. 38, TR. 86 (Floyd Cumbie testifying that at no time during 1996 and 1997 did anyone representing Mr. Broadnax ask to speak to him personally, and he was never informed that anyone representing Mr. Broadnax asked the Warden for permission to talk to him.); Vol. 38, TR. 93 (Donald Bowden testifying that no one representing Mr. Broadnax ever spoke to him prior to Mr. Broadnax's trial.); *Id.* (The Court asking: "No one from the defense – the defense lawyer – Mr. Broadnax's lawyer, let me ask it real plain. Did they contact you to ask you to testify concerning events of the night that his wife was killed." Mr. Bowden testified that "The only people that I was contacted by would be the DA's office." Mr. Bowden also stated that the prosecution threatened him.); Vol. 37, TR. 64 (Mr. Whetstone testifying that no defense attorney or investigator ever questioned him on Mr. Broadnax's behalf at the time of trial).

[52] Doc. 20, p. 26 ("In rejecting Broadnax's contention, the ACCA held that Broadnax is essentially attacking his lawyers for information he never provided them, and that consequently, counsel did not perform deficiently.") (citation omitted).

did not come from the defendant himself.  This Court never addressed *Rompilla* directly and completely, and its opinion squarely contradicts *Rompilla* and is manifestly erroneous.

This Court's failure to properly address the Supreme Court precedent that addresses the extent to which counsel must investigate in the face of contrary information or indeed obstruction from the defendant is manifest error of the type that requires the final judgment to be vacated.[53]

### B. This Court's conclusion that Mr. Broadnax was not denied due process of law because the state court refused to allow admissible evidence to be presented during state post-conviction proceedings is manifestly erroneous and fails to take into account relevant Supreme Court precedent.

At Mr. Broadnax's post-conviction hearing, his expert, Dr. Ken Benedict, was not permitted to testify to hearsay information[54] he obtained while working on Mr. Broadnax's case. There is no dispute that had Dr. Benedict testified at trial, he would have been permitted to testify in full. This Court agreed with the Alabama Courts that Mr. Broadnax was not denied due process of law. That conclusion is manifestly erroneous.

This Court concluded that Mr. Broadnax was not denied due process of law, because he could have testified at his hearing, and could have called the witnesses that Dr. Benedict spoke to during his research. Therefore, he had an

---

[53] This Court expressly did not reach the Court of Criminal Appeals' prejudice prong ruling, therefore; it would be appropriate, after vacating its judgment, to assess the prejudice ruling from the state court.

[54] Mr. Broadnax did not concede that this information was hearsay in his petition and still does not, but for purposes of this argument will assume the information was hearsay.

opportunity to present the evidence.[55] However, in reaching this conclusion, this Court never addressed the application of the Supreme Court's decision in *Sears v. Upton*.[56]

In *Sears,* the Supreme Court held that "we have also recognized that reliable hearsay evidence that is relevant to a capital defendant's mitigation defense should not be excluded by rote application of a state hearsay rule."[57] *Sears* does not contain a "unless the defendant can provide the information in a different manner" exception. Mr. Broadnax's expert was severely curtailed in what he could testify to, limited only to testifying about the tests that he performed. This Court did state that if it had found deficient performance, it would have considered Dr. Benedict's proffered testimony.[58] However, by its very nature, proffered testimony is a summary and more truncated than fully explored testimony. It would have been appropriate for this Court to hold an evidentiary hearing on the question of prejudice, where Dr. Benedict would have been allowed to testify in full.

The inherent contradiction in Alabama's law, as acknowledged by the State,[59] is that Dr. Benedict could have testified in full at the original penalty phase of the trial, but could not testify in the same manner to prove that

---

[55] Doc. 20, p. 43.

[56] 561 U.S. 945 (2010). Mr. Broadnax brought *Sears* to the attention of this court in his reply brief. Doc. 19, pp. 45-46.

[57] 561 U.S. at 950, n.3.

[58] Doc. 20, p. 45, n.13.

[59] Vol. 38, pp. 22-23 ("[T]he rules of evidence including the hearsay rule apply in Rule 32 cases. I understand that at the penalty phase the rules of evidence are relaxed and hearsay is allowed in for purposes of mitigation.").

defense counsel were ineffective for not calling someone like him. Rote application of this rule denied Mr. Broadnax due process of law and a fair post-conviction proceeding. This Court should vacate its judgment and find that Alabama's application of the hearsay rule in state post-conviction to exclude otherwise admissible evidence violates due process. Mr. Broadnax asks this Court to hold an evidentiary hearing on all claims where Dr. Benedict's testimony was relevant, or remand the case to state court with an order to conduct a new hearing where Dr. Benedict may testify in full.

**IV. Conclusion**

For the above reasons, Mr. Broadnax respectfully requests this Court to amend or vacate its judgment and grant him habeas corpus relief.

Respectfully submitted,

/s/ John Anthony Palombi
John Anthony Palombi
KY Bar No. 86784
Assistant Federal Defender
Federal Defenders
Middle District of Alabama
817 S. Court Street
Montgomery, AL 36104
Telephone: 334.834.2099
Email: john_palombi@fd.org

/s/ Leslie S. Smith
Leslie S. Smith
ASB-0785-T71L
Assistant Federal Defender
Federal Defenders
Middle District of Alabama
817 S. Court Street
Montgomery, AL 36104
Telephone: 334.834.2099
Email: leslie_smith@fd.org

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 10, 2020, I filed the above memorandum with the Clerk of the Court using the CM/ECF system.

/s/John Palombi
Counsel for Petitioner