# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **DONALD BROADNAX,** | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) CASE NO.  2:13-CV-1142-AKK |
| | ) |
| **JEFFERSON S. DUNN,** | ) |
| **Commissioner, Alabama Department** | ) |
| **of Corrections,** | ) |
| | ) |
| Respondent. | ) |

## **MEMORANDUM OPINION**

This case is before the court on Donald Broadnax's Rule 59(e) Motion to Reconsider, Alter, or Amend the Court's Final Judgment.  Doc. 22.  After careful consideration, the motion is due to be denied.

## **I.**

"The only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact.  A Rule 59(e) motion cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007). Broadnax's motion "is not based on newly-discovered evidence;" therefore, "the only basis for granting it would be a manifest error of law or fact." *Barber v. Dunn*, No.

5:16-CV-00473-RDP, 2019 WL 1979433, *1 (N.D. Ala. May 3, 2019), *appeal filed* No. 19-12133 (11th Cir. May 31, 2019).

"A 'manifest error' is not just any error but one 'that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record.'" *Id*. (quoting *Error*, Black's Law Dictionary (10th ed. 2014)).

> ["]Manifest error["] does not mean that one does not like the outcome of a case, or that one believes the court did not properly weigh the evidence. *See Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993) (noting that "mere disagreement does not support a Rule 59(e) motion"). Rather, manifest error is an "error that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record." Error, Black's Law Dictionary (9th ed. 2009). [Plaintiff] has offered nothing even to suggest any error of this magnitude; he simply believes this court got it wrong the first time. Any litigant who so believes may, of course, seek appellate review. But such a litigant will find no relief under Rule 59(e).

*Daughtry v. Army Fleet Support, LLC*, No. 1:11CV153-MHT, 2014 WL 466100, *2 (M.D. Ala. Feb. 5, 2014). The Eleventh Circuit has "reject[ed] any argument that to err legally always equates to a 'manifest disregard of the law.'" *Montes v. Shearson Lehman Bros.*, 128 F.3d 1456, 1461 (11th Cir. 1997). Therefore,

> Because [Broadnax] must show that the court made manifest errors of law or fact in denying his § 2254 habeas petition, his burden is especially high. That is so because, under § 2254(d)(1), federal habeas relief is precluded if "fairminded jurists could disagree" about the

2

correctness of the state court's decision to deny [Broadnax] relief. *Harrington v. Richter*, 562 U.S. 86, 101-02 (2011). As the Supreme Court has repeatedly explained, to obtain federal habeas relief, a habeas petitioner must show that the state court's adjudication of his claims was not merely "incorrect or erroneous" but "objectively unreasonable" – such that no fairminded jurist could agree with the state court's disposition of his claims under clearly established Supreme Court precedent. *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003); *see also Harrington*, 562 U.S. at 101-02. Thus, to succeed on his Rule 59(e) motion, [Broadnax] must show that this court completely disregarded controlling law or credible record evidence in concluding that the state court's adjudication of [Broadnax's] claims did not transgress § 2254's highly deferential standard of review. That is a high burden indeed, and one that [Broadnax] has not come close to carrying.

*Barber*, 2019 WL 1979433, at *1.

## II.

Broadnax raises two issues in support of his motion: (1) that the denial of his "claim that his trial counsel were ineffective for failing to investigate his alibi is based on manifest errors of the law governing ineffective assistance of counsel;" and (2) that the finding that he "was not denied due process of law because the state court refused to allow admissible evidence to be presented during state post-conviction proceedings is manifestly erroneous and fails to take into account relevant Supreme Court precedent." Doc. 22 at 2, 15. These two contentions fail to show the existence of a manifest disregard of the law.

## A.

Broadnax's first contention is related to his alibi defense. As Broadnax puts it, "[d]uring state post-conviction proceedings, [he] presented unrefuted evidence establishing that he was present and accounted for at the work release center [WRC] at 9:00 p.m." Doc. 22 at 3. Broadnax overlooks however that the evidence he presented at his second post-conviction hearing that he was purportedly at the WRC on the night of the murders is *not* undisputed.

To begin, Broadnax's claimed alibi is disputed by his own statements to law enforcement officers shortly after the murders. In two statements he made to police officers, contrary to his contention now about being at the WRC, Broadnax claimed "he had been at Welborn the entire day and evening of the murders, until approximately 10:45 p.m., and that he had telephoned his brother from Welborn at approximately 9:00 p.m." *Broadnax v. State*, 130 So. 3d 1232, 1239 (Ala. Crim. App. 2013). And Broadnax relayed the same information to his attorneys, and only raised the purported WRC alibi for the first time 12 years later.[1] Moreover, Broadnax also

---

[1]The Alabama Court of Criminal Appeals noted that this claim of ineffective assistance of counsel was –

> based on an alibi defense that directly contradicts the alibi defense presented at Broadnax's trial. In his statements to police, in his statements to his trial attorneys . . . , and at trial, Broadnax claimed that he was at Welborn, not at the work-release facility, until about 10:45 p.m. the night of the murders. Indeed, from all that appears, Broadnax continued claiming to have been at Welborn that night for many

asserted in verified post-conviction pleadings that he was at Welborn on the night of the murders.² Finally, two witnesses testified at trial that Broadnax was seen at Welborn at or about 10:45 on the night of the murders.³ In short, the record belies

---

> years after his convictions and sentence. Even in both his original petition, filed in 2003, and his first amended petition, filed in 2004, Broadnax continued in his assertion that he was at Welborn the night of the murders. It was not until 2008, 12 years after the crime, and after this Court had reversed the judgment denying his first amended petition and Broadnax had obtained new Rule 32 counsel to represent him, that Broadnax suddenly changed his story regarding his whereabouts the night of the murders and asserted that he was not at Welborn, as he had alleged for 12 years, but was at the Alexander City work-release facility at 9:00 p.m. the night of the murders.

*Broadnax*, 130 So. 3d at 1249.

²*See* Ala. R. Crim. P. 32.6 ("A proceeding under this rule is commenced by filing a petition, verified by the petitioner or the petitioner's attorney, with the clerk of the court."); Ala. R. Crim. P. App. to 32 (The form used to file a Rule 32 petition states, in pertinent part, "This petition must be legibly handwritten or typewritten, and must be signed by the petitioner or petitioner's attorney under penalty of perjury. Any false statement of a material fact may serve as the basis for prosecution and conviction for perjury.").

³In relevant part, the witnesses testified:

> "At approximately 10:45 p.m. [on the night of the murders], Mark Chastain, a [leadman] at Welborn, found Broadnax inside a building while securing the building for the night. Chastain testified that he told Broadnax that the alarm had been set and that they had to exit the building. According to Chastain, when he asked Broadnax why he was still in the building, Broadnax stated that the work release van had dropped him off . . . ."

> "Kathy Chastain, Mark Chastain's wife, testified that while she was outside the building waiting for her husband to secure the building, she saw an individual matching Broadnax's description get out of a [white king-cab pickup truck] and run into the building."

*Broadnax v. Dunn*, No. 2:13-CV-1142-AKK, 2019 WL 6829995, at *2 (N.D. Ala. Dec. 13, 2019) (quoting *Broadnax v. State*, 825 So. 2d 134, 150-51 (Ala. Crim. App. 2000)).

Broadnax's contention twelve years later that he was at the WRC, instead of at Welborn as he had previously and consistently stated, and as witnesses had testified.

In denying his claim, this court held:

> To succeed on his claim, Broadnax must show that no reasonable lawyer, in light of information "already in hand" at the time of trial, *see Strickland*, 466 U.S. at 699, would have neglected to investigate whether Broadnax was at the WRC on the night of the murders. *See Wiggins v. Smith*, 539 U.S. 510, 527 (2003)("In assessing the reasonableness of an attorney's investigation, however, a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further."). Broadnax has failed to make this showing. In particular, Broadnax has not shown that counsel knew or had reason to suspect that Broadnax was at the WRC at the time of the murders.

*Broadnax*, 2019 WL 6829995, *13. Although Broadnax argues that had counsel investigated whether he was at the WRC at 9:00 on the night of the murders they would have discovered his post-conviction evidence, he has not alleged any facts – other than the fact that Broadnax was a prisoner living at the WRC – establishing "the quantum of evidence already known to counsel," and whether this "known evidence would lead a reasonable attorney to investigate further." *See Wiggins v. Smith*, 539 U.S. at 527.

Instead, Broadnax appears to argue counsel had a bright-line duty to investigate his presence at the WRC, stating "even if the [Welborn] alibi was suggested by Mr. Broadnax, counsel could not neglect to investigate both the possible alibi and

alternative defenses," based on ABA Guidelines. Doc. 22 at 9 and n.29 (quoting *Bemore v. Chappell*, 788 F.3d 1151, 1164 (9th Cir. 2015)(quotations and alterations omitted).[4] The Supreme Court, however, has never established a bright-line duty to investigate other possible alibis or alternative defenses. Rather, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland v. Washington*, 466 U.S. 668, 688 (1984).[5] Moreover, the Court

---

[4]He states:

The Supreme Court held in *Rompilla v. Beard*[, 545 U.S. 374 (2005),] that a defendant's unhelpfulness respecting his case does not negate counsel's independent duty to investigate. In *Rompilla*, counsel conducted some mitigation investigation, but declined to review prior conviction records they knew the prosecution would use at sentencing. "If the defense lawyers had looked in the file on Rompilla's prior conviction, it is uncontested they would have found a range of mitigation leads that no other source had opened up." [*Id*. at 390.]

"Rompilla's own contributions to any mitigation case were minimal" and "[t]here were times when Rompilla was even actively obstructive by sending counsel off on false leads." [*Id*. at 381.] Indeed, the Third Circuit found that "neither Rompilla himself nor any family member even hinted at the problems on which Rompilla's ineffective assistance claim is based." [*Rompilla v. Horn*, 355 F.3d 233, 241 (3d Cir. 2004); *rev'd* 545 U.S. at 374.] Nonetheless, the Supreme Court held that "failure to examine Rompilla's prior conviction file fell below the level of reasonable performance." [*Rompilla*, 545 U.S. at 383.] In doing so, it quoted the 1982 ABA Standards for Criminal Justice 4-4.1 (2d ed. 1982 Supp.), affirming, in relevant part, "[t]he duty to investigate exists regardless of the accused's admissions or statements to the lawyer . . . ." [*Id*. at 387.]

Doc. 22 at 9-10.

[5]As the Eleventh Circuit explained:

[Petitioner] argues . . . that the state habeas court's decision cannot be squared with *Strickland*'s holding as the Supreme Court has applied the holding in several later cases: *Williams v. Taylor*, 529 U.S. 362 (2000); *Wiggins v. Smith*, 539 U.S. 510 (2003); *Rompilla v. Beard*, 545 U.S. 374 (2005); *Porter v. McCollum*, 558 U.S. 30

has held that ABA Guidelines cannot be substituted for local and contemporaneous professional standards: "Restatements of professional standards, we have recognized, can be useful as 'guides' to what reasonableness entails, but only to the extent they describe the professional norms prevailing when the representation took place." *Bobby v. Van Hook*, 558 U.S. 4, 7 (2009). And, "[b]eyond the general requirement of reasonableness, 'specific guidelines are not appropriate.'" *Cullen v. Pinholster*, 563 U.S. 170, 195 (2011)(quoting *Strickland*, 466 U.S. at 688). Indeed, "[i]t is '[r]are' that constitutionally competent representation will require 'any one technique or approach.'" *Id*. (quoting *Harrington v. Richter*, 562 U.S. 86,106 (2009)). "[T]he Strickland test of necessity requires a case-by-case examination of the evidence." *Id*. at 196 n.17 (citations and internal quotations omitted).

---

(2009); and *Sears v. Upton*, 561 U.S. 945 (2010). The [Eleventh Circuit] Court notes initially that "these [cases] are . . . relevant only to the extent they might demonstrate that [petitioner's] counsel, confronted with circumstances like those presented at the time and place of [his] trial, failed to adhere to the standard of reasonable representation." *Anderson v. Sec'y, Fla. Dep't of Corr.*, 752 F.3d 881, 904 (11th Cir. 2014). The Supreme Court has faulted lower courts for reading these cases to establish "a 'constitutional duty to investigate' capital cases in a particular, prescribed way." *Id.* at 906 (quoting *Pinholster*, 131 S. Ct. at 1406). They do not create any "mechanistic rules of law at all for investigation or for presentation of evidence in capital cases." *Chandler*, 218 F.3d at 1317 n.21. Nor can any of these cases "command the outcome for this case" because the facts here are "materially different, allowing for different outcomes under *Strickland*." *Id*.

*Butts v. GDCP Warden*, 850 F.3d 1201, 1243-45 (11th Cir. 2017)(alterations added; footnote, original alterations, and parallel citations omitted).

Here, Broadnax asserts that federal law clearly established that counsel had a duty to investigate his alibi "regardless of any admission or statement by [him] concerning facts constituting guilt." *See* doc. 22 at 10-11 (citations omitted). And, Broadnax argues that "[t]he clearest illustration of this Court's manifestly erroneous legal conclusions is its acceptance of the ACCA's wholly incorrect view that Mr. Broadnax was required to provide all of the information to his lawyers, and his failure to do so meant that they did not perform deficiently." *Id*. at 14 (footnote omitted). The court's opinion, according to Broadnax, "squarely contradicts *Rompilla* and is manifestly erroneous." *Id*. at 15. These contentions are unavailing.

To begin, no clearly established law has set forth such a specific duty on counsel. Addressing a similar issue, the Eleventh Circuit held:

> [P]etitioner implies that his failure to inform Manning [petitioner's attorney] about his abusive childhood should have no bearing on our analysis of his claim [based on a deficient investigation].
>
> This argument misstates the holdings in *Rompilla* and *Wiggins*. In *Rompilla*, the defendant's "own contributions to any mitigation case were minimal," but this was irrelevant to the [Supreme] Court's decision on effectiveness. 545 U.S. at 381. The Court held counsel ineffective because they failed to examine a readily available file containing information about Rompilla's prior conviction for rape and assault, despite knowing that the prosecutor was planning on using Rompilla's prior conviction as an aggravating factor in seeking a death sentence. *Id*. at 383. The [Supreme] Court never fully addressed the significance of Rompilla's lack of cooperation. *Id.* ("There is no need to say more [regarding whether counsel should have further investigated Rompilla's background], however, for a further point is clear and dispositive: the

> lawyers were deficient in failing to examine the court file on Rompilla's prior conviction.").
>
> In *Wiggins*, the defendant never informed counsel about the sexual abuse he suffered as a child, but did describe his own background as "disgusting" in a pre-sentence investigation report, to which counsel had access. 539 U.S. at 523. In addition, the Court never directly addressed the significance of Wiggins's failure to inform counsel about his sexual abuse, because counsel had sufficient information from available records to encourage further investigation into Wiggins's upbringing, independent of any information provided by Wiggins. *Id*. at 524. For purposes of our review under section 2254(d)(1), federal law consists of the holdings of Supreme Court cases, not the dicta, and petitioner is not even relying on dicta; these cases simply say nothing about the significance of Rompilla's or Wiggins's failure to provide information to counsel. *See Gore* [*v. Sec'y for Dep't of Corr.*, 492 F.3d [1273,] 1294 [(11th Cir. 2007)]. ("Section 2254(d)(1) explicitly establishes Supreme Court precedent as the *vel non* of 'clearly established federal law.' Our basis for comparison, therefore, is the holdings – not the dicta – of Supreme Court decisions at the time the Florida Supreme Court issued its opinion.")(citation omitted).

*Newland v. Hall*, 527 F.3d 1162, 1204–05 (11th Cir. 2008). Moreover, Broadnax's statements – which consistently insisted for twelve years following the murders that he was at Welborn – was a fact considered by this court and the state appellate court in determining whether reasonable counsel would have investigated whether Broadnax was somewhere other than Welborn on the night of the murders as he claimed.

Finally, Broadnax's case –

is not a case in which the defendant's attorneys failed to act while potentially powerful mitigating evidence stared them in the face, *cf.*

> *Wiggins*, 539 U.S. at 525, or would have been apparent from documents any reasonable attorney would have obtained, *cf. Rompilla v. Beard*, 545 U.S. 374, 389–393.[6] It is instead a case, like *Strickland* itself, in which defense counsel's "decision not to seek more" mitigating evidence from the defendant's background "than was already in hand" fell "well within the range of professionally reasonable judgments." 466 U.S., at 699.

*Bobby*, 558 U.S. at 11-12 (parallel citations omitted and footnote added).  As this court held, "[r]elevant to the court's inquiry, although Broadnax presented evidence at the 2011 Rule 32 hearing that he was at the WRC by 9:00 p.m. on the night of the murders, he did not present any evidence that his trial attorneys had this information or that they had any reason to suspect that he was at the WRC, rather than at Welborn as he had told them and as witnesses at trial had confirmed." *Broadnax*, 2019 WL 6829995, at *12.[7]

---

[6]The *Rompilla* court noted that the criminal file at issue contained "mitigation evidence or red flags" that counsel "could not reasonably have ignored . . . simply because they were unexpected." *Rompilla*, 545 U.S. at 391 n.8.  However, the Court did not find a duty to search for this mitigation evidence simply because the evidence was there; the duty to search further was the product of the suggestion of the evidence's existence contained in the criminal file.

[7]As the court noted in denying his claim:
. . . Broadnax has not shown that counsel knew or had reason to suspect that Broadnax was at the WRC at the time of the murders.

"[T]he duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard*, 545 U.S. 374, 383 (2005).  Therefore, "[i]n assessing the reasonableness of an attorney's investigation, . . . a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins v. Smith*, 539 U.S. at 527.  This "known evidence" includes defendant's statements and actions, and, indeed, "[t]he reasonableness of counsel's actions may be determined or substantially influenced

11

Put simply, neither the Supreme Court nor the Eleventh Circuit has held that counsel have an independent duty to pursue a potential alibi that is different from the one a client repeatedly asserted and one the client and others never even mentioned or insinuated exited. Broadnax's assertions to the contrary – i.e. that the facts and circumstances existing at the time of trial – including his own statements – are irrelevant to the reasonableness of his counsel's investigation into an alternative alibi – do not demonstrate a manifest error of law sufficient to grant his motion.

**B.**

Broadnax's second contention of alleged error is related to the suitability of hearsay evidence at post-conviction proceedings. As Broadnax puts it:

---

by the defendant's own statements or actions." *Strickland*, 466 U.S. at 691. As *Strickland* notes:

> Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions.

*Id*.

*Broadnax*, 2019 WL 6829995, at *13.

> At Mr. Broadnax's post-conviction hearing, his expert, Dr. Ken Benedict, was not permitted to testify to hearsay information he obtained while working on Mr. Broadnax's case. There is no dispute that had Dr. Benedict testified at trial, he would have been permitted to testify in full. This Court agreed with the Alabama Courts that Mr. Broadnax was not denied due process of law. That conclusion is manifestly erroneous.

Doc. 22 at 15. To support this contention, Broadnax notes that the Supreme Court has held that reliable hearsay evidence is admissible during the penalty phase of a death-penalty trial. *See* doc. 22 at 16 and n.57.[8] Indeed, as it relates to the penalty phase, the Court held, "the fact that some of [Sear's] evidence may have been 'hearsay' does

---

[8]He states:
> In *Sears* [*v. Upton*, the Supreme Court held that "we have also recognized that reliable hearsay evidence that is relevant to a capital defendant's mitigation defense should not be excluded by rote application of a state hearsay rule." [Footnote 57] *Sears* does not contain [an] "unless the defendant can provide the information in a different manner" exception.
>
>         [Footnote 57]   561 U.S. at 950, n.3.
Doc. 22 at 16 and n.57.

This quote from *Sears* is found in footnote 6 at page 950. Footnote 3 of the dissent, cited on page 950 of the majority opinion, notes, in pertinent part:

> In *Green*, we held it violated constitutional due process to exclude testimony regarding a co-conspirator's confession that he alone committed the capital murder with which the defendant was charged. Our holding depended on "th[e] unique circumstances" of the case: the testimony to be used at sentencing was "highly relevant" and "substantial[ly]" reliable as a statement against penal interest made to a close friend; it was corroborated by "ample" evidence and was used by the State to obtain a conviction in a separate trial against the co-conspirator. 442 U.S., at 97, 99 S. Ct. 2150. Here there are no such circumstances. The testimony is uncorroborated second-hand reporting from self-interested witnesses that is unreliable and therefore likely inadmissible.

*Sears*, 561 U.S. at 961 n.3 (Scalia, J., dissenting).

13

not necessarily undermine its value – or its admissibility – for penalty phase purposes." *Sears v. Upton*, 561 U.S. 945, 950 (2010). As the Court noted:

> Like Georgia's "necessity exception" to its hearsay rules, see Ga. Code Ann. § 24-3-1(b) (2006), we have also recognized that reliable hearsay evidence that is relevant to a capital defendant's mitigation defense should not be excluded by rote application of a state hearsay rule. *See Green v. Georgia*, 442 U.S. 95, 97 (1979) (per curiam) ("Regardless of whether the proffered testimony comes within Georgia's hearsay rule, under the facts of this case its exclusion constituted a violation of the Due Process Clause . . . . The excluded testimony was highly relevant to a critical issue in the punishment phase of the trial"); *see also Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) ("In these circumstances, where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice"). We take no view on whether the evidence at issue would satisfy the considerations we set forth in *Green*, or would be otherwise admissible under Georgia law.

*Id*. at 950 n.6 (parallel citations omitted).

Critically, however, neither *Sears* nor the cases cited therein establish a right to the presentation of inadmissible hearsay evidence during the state-court post-judgment hearing. In addressing the merits of Broadnax's due-process issue, this court held that the exclusion of Dr. Benedict's hearsay testimony pursuant to state evidentiary rules did not violate Broadnax's right to due process: "Simply arguing that hearsay statements are admissible in the penalty phase proceedings is insufficient to establish that exclusion of hearsay testimony made the Rule 32 proceeding so fundamentally unfair that it violated his right to due process." *Broadnax*, 2019 WL

6829995, at *19. There is no clearly established federal law holding that a defendant's due process rights are violated by the exclusion of hearsay testimony, pursuant to state law, during a state post-conviction proceeding. Consequently, as to this issue, Broadnax has failed also to prove that this court's decision constituted a manifest disregard of the law.

### III.

In light of his failure to show that this court completely disregarded controlling law or credible record evidence in rejecting his claims, Broadnax's Rule 59(e) Motion to Reconsider, Alter, or Amend the Court's Final Judgment, doc. 22, will be denied.

**DONE** and **ORDERED** this 8th day of June, 2020.

_____
ABDUL K. KALLON
UNITED STATES DISTRICT JUDGE